[No. F018396. Fifth Dist. Apr. 1, 1993.]

JOSE RANGEL RODRIGUEZ, Petitioner, v.
THE SUPERIOR COURT OF TULARE COUNTY, Respondent.
THE PEOPLE, Real Party in Interest.

## Counsel

Neal Pereira, Public Defender, Tim Bazar, Assistant Public Defender, Hugo Loza, K. Bennett Smukler and David M. Liebowitz, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Edgar Kerry and Jane Olmos, Deputy Attorneys General, for Real Party in Interest.

## OPINION

**ARDAIZ, Acting P. J.—**

### PROCEDURAL HISTORY

Petitioner has been charged by information with rape (Pen. Code, § 261, subd. (2)), robbery (Pen. Code, § 211), residential burglary (Pen. Code, § 459) and first degree murder (Pen. Code, § 187, subd. (a)). The first degree murder charge also alleges special circumstances of rape, robbery and burglary (Pen. Code, § 190.2, subd. (a)(17)). He has entered a plea of not guilty as to each count and has denied each special circumstance allegation.

After the court ordered petitioner to provide real party in interest with pretrial discovery of all guilt phase material pursuant to Penal Code sections 1054 through 1054.7, petitioner notified real party in writing that petitioner intended to call Dr. Jose J. LaCalle, a psychologist, as a witness during the guilt phase of petitioner's trial. Petitioner wishes to present the testimony of Dr. LaCalle in a motion *in limine* to show that certain statements that had been made by petitioner had been made involuntarily and therefore should not be admitted into evidence at petitioner's trial. Dr. LaCalle had been retained by the defense for the purpose of evaluating petitioner to see if any mental defenses should be raised. Petitioner provided real party with most of a nine-page report authored by Dr. LaCalle, but deleted one portion of the fourth page of the report. On the copy of the report given by petitioner to real party, the deleted portion of page four appears as a blank space except for the typewritten words "DEFENDANT'S STATEMENT RE: THE OFFENSE DELETED."[1]

Real party then moved to compel production by petitioner of a complete, unedited copy of the LaCalle report. Petitioner opposed the motion, arguing that the deleted portion of the LaCalle report was protected from disclosure by the attorney-client privilege, the psychotherapist-patient privilege, and the United States Constitution's Fifth Amendment privilege against self-incrimination. The court, after hearing oral argument on the motion, ruled that "the statement, that is in its entirety, should be turned over if the witness

---

[1]Real party's motion in superior court to compel production of the complete LaCalle report included a declaration of a deputy district attorney stating "The Public Defender has edited out a crucial portion of this witness' statement: The defendant's version of the incident to the psychologist." Petitioner has not disputed that the above described editing of Dr. LaCalle's report was done by his attorneys. Petitioner's memorandum of points and authorities in support of his petition states: "Petitioner provided real party with a copy of Dr. LaCalle's report, but deleted one portion, including instead the words, 'Defendant's Statement Re: The Offense Deleted.' "

is going to be called." The judge also stated, with reference to petitioner calling Dr. LaCalle as a witness, "[i]f you don't call him, don't plan to call him, I don't think you need to turn it over." The court also ruled that if petitioner did provide real party with the complete report of Dr. LaCalle, then real party could call Dr. LaCalle as a prosecution witness in support of real party's case-in-chief (whereupon real party would then presumably ask Dr. LaCalle what petitioner had told him about the "offense"), even if petitioner himself did not call Dr. LaCalle as a witness.

Petitioner then filed the instant petition. He asks us to issue an order directing the superior court to vacate its ruling on real party's motion to compel production of the complete LaCalle report, and to issue a new and different order denying real party's motion to compel. His petition argues that the superior court's order "will have the effect of barring petitioner from raising a constitutional challenge under the Fourteenth Amendment to the United States Constitution on the grounds that his statements to the officers were involuntary, and will limit his ability to challenge those statements on *Miranda* grounds."[2] We issued orders staying enforcement of the superior court's order and staying petitioner's trial, and then issued an order to show cause why the relief prayed for by petitioner should not be granted.

DISCUSSION

I.

THE DISCOVERY STATUTES

On June 5, 1990, the electorate approved an initiative measure known as Proposition 115. A portion of Proposition 115 pertains to pretrial discovery in criminal cases, and appears at Penal Code sections 1054 through 1054.7.[3] At issue in this case are sections 1054.3 and 1054.6. Section 1054.3 states:

"The defendant and his or her attorney shall disclose to the prosecuting attorney:

"(a) The names and addresses of persons, other than the defendant, he or she intends to call as witnesses at trial, together with any relevant written or recorded statements of those persons, or reports of the statements of those persons, including any reports or statements of experts made in connection with the case, and including the results of physical or mental examinations,

---

[2] See *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

[3] All statutory references are to the Penal Code unless otherwise indicated.

scientific tests, experiments, or comparisons which the defendant intends to offer in evidence at the trial.

"(b) Any real evidence which the defendant intends to offer in evidence at the trial."

Section 1054.6 states:

"Neither the defendant nor the prosecuting attorney is required to disclose any materials or information which are work product as defined in subdivision (c) of Section 2018 of the Code of Civil Procedure, or which are privileged pursuant to an express statutory provision, or are privileged as provided by the Constitution of the United States."

In this matter we must decide whether, based on the facts of this case, petitioner may announce an intention to call his defense psychologist as a witness and still refuse to provide discovery of the deleted portion of the psychologist's report.[4] Petitioner argues that the attorney-client privilege, the psychotherapist-patient privilege, the United States Constitution's Fifth Amendment privilege against self-incrimination, the attorney work product doctrine and the United States Constitution's Sixth Amendment right to counsel all protect the deleted portion of the report from discovery. Respondent argues that disclosure of the name of the witness, Dr. LaCalle, waives any privilege as to Dr. LaCalle's report including petitioner's statements and, alternatively, that disclosure of a portion of Dr. LaCalle's report constitutes waiver of privilege as to the remaining portions of the report.

## II.

### ATTORNEY-CLIENT PRIVILEGE

As has been indicated, the specific information contained in the written report but deleted on the copy given to the prosecution was the statement petitioner made to Dr. LaCalle regarding the charged offenses. This communication was made at the behest of petitioner's counsel for purposes of psychological evaluation in preparation of the defense case.

"Subject to Section 912 and except as otherwise provided in this article, the client, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer if the privilege is claimed by:

---

[4]Here, other than petitioner's statement regarding the current offenses, petitioner did not assert privilege as to the balance of the report. (See *People* v. *Lines* (1975) 13 Cal.3d 500, 511 [119 Cal.Rptr. 225, 531 P.2d 793].)

"(a) The holder of the privilege;

"(b) A person who is authorized to claim the privilege by the holder of the privilege . . . ." (Evid. Code, § 954.)

"As used in this article, 'confidential communication between client and lawyer' means information transmitted between a client and his lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship." (Evid. Code, § 952.)

 Clearly, the statement of petitioner to Dr. LaCalle comes within the express definition of a privileged communication under the attorney-client privilege. The Attorney General concedes that it is a privileged communication. Under a traditional analysis of privileged material, the report of Dr. LaCalle concerning petitioner's communication would also be privileged. *City & County of S.F.* v. *Superior Court* (1951) 37 Cal.2d 227 [231 P.2d 26, 25 A.L.R.2d 1418] is instructive of this view.

"It is no less the client's communication to the attorney when it is given by the client to an agent for transmission to the attorney, and it is immaterial whether the agent is the agent of the attorney, the client, or both. '[T]he client's freedom of communication requires a liberty of employing other means than his own personal action. The privilege of confidence would be a vain one unless its exercise could be thus delegated. A communication, then, by *any form of agency* employed or set in motion by the client is within the privilege.

" 'This of course includes communications through an *interpreter*, and also communications *through a messenger* or any other *agent of transmission*, as well as communications *originating with the client's agent* and made to the attorney. It follows, too, that the communications of the *attorney's agent* to the attorney are within the privilege, because the attorney's agent is also the client's sub-agent and is acting as such for the client.' [Citations.] Thus, when communication by a client to his attorney regarding his physical or mental condition requires the assistance of a physician to interpret the client's condition to the attorney, the client may submit to an examination by the physician without fear that the latter will be compelled to reveal the information disclosed." (*City & County of S.F.* v. *Superior Court, supra,* 37 Cal.2d at pp. 236-237, italics original.)

 We need not address the question of whether the provisions of section 1054.3 regarding the "results of physical or mental examinations" have altered the degree of protection afforded by the attorney-client privilege according to judicial interpretations. It is clear that the direct statements of the "client" to his/her attorney or "those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted . . ." are expressly referred to by Evidence Code section 952.

## III.

### ATTORNEY-CLIENT PRIVILEGE IS NOT WAIVED BY MERE NAMING OF DEFENSE EXPERT

Section 1054.3 clearly provides that a defendant must disclose the names and addresses of persons "he or she intends to call as witnesses at trial, together with any relevant written or recorded statements of those persons . . . ." Dr. LaCalle falls within this provision as a person petitioner intends to call. Further, Dr. LaCalle prepared a written report "made in connection with the case . . . ." Section 1054.3 includes statements of experts, and Dr. LaCalle is acknowledged by all parties as an expert in the area of psychology for purposes of the discovery order. Additionally, petitioner does not deny that Dr. LaCalle may be testifying concerning statements petitioner made to him concerning the event and that his opinion could, conceivably, be based, in part, on those statements. Therefore, absent any further exception or restriction, Dr. LaCalle's report would be discoverable under the clear language of section 1054.3.

However, petitioner argues section 1054.6 provides that even if a person will be a witness within the meaning of section 1054.3, information which may be the subject of the witness' testimony need not be disclosed pursuant to section 1054.3 if that information is privileged. In other words, petitioner maintains that section 1054.3 must be read in conjunction with 1054.6 so that only nonprivileged information must be given to the prosecution pursuant to a discovery order. Respondent argues that the acknowledgment of Dr. LaCalle as a witness waives any privileged character the witness's report may have had. In effect, respondent argues the privilege only exists until the witness is designated pursuant to the provisions of 1054.3. We disagree.

Section 1054.3 provides that upon designation by the defense as a witness, "any relevant written or recorded statements of those persons, or reports of the statements of those persons, including any reports or statements of

experts made in connection with the case, and including the results of physical or mental examinations . . ." shall be disclosed. Accordingly, respondent concludes the reports of Dr. LaCalle must be disclosed.

Section 1054.6 provides that "Neither the defendant nor the prosecuting attorney is required to disclose any materials or information which are work product . . . or which are privileged pursuant to an express statutory provision . . . ." Respondent maintains that section 1054.6 merely acknowledges privilege which exists until the time of designation of the witness and does not provide for any privilege after designation. This interpretation ignores accepted standards of statutory construction.

■ "A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole. Thus, it is not proper to confine interpretation to the one section to be construed." (2A Sutherland, Statutory Construction (5th ed. 1992) § 46.05, p. 103, fn. omitted.)

While respondent's interpretation of disclosure is consistent with a literal interpretation of section 1054.3, accepted rules of statutory construction require that section 1054.3 be read in conjunction with section 1054.6.

■ It would seem evident that if section 1054.3 is read literally, i.e., as requiring disclosure of all relevant written or recorded statements upon designation of a witness, then there would be no exception for privileged information. However, section 1054.6 provides that information subject to express privilege need not be disclosed. At this juncture, certain observations should be noted. First, absent section 1054.3 and the designation of a witness, there is no statutory or constitutional requirement that the defendant's information be disclosed. (*Izazaga* v. *Superior Court* (1991) 54 Cal.3d 356, 373 [285 Cal.Rptr. 231, 815 P.2d 304].) Second, the information in question concededly falls within attorney-client privilege. Third, information privileged under the auspices of Evidence Code section 954 and attorney-client privilege need not be turned over unless section 1054.3 eliminates any protection afforded under an express privilege. Therefore, unless section 1054.6 is to be interpreted as having no effect on section 1054.3, the information would lose its privileged or protected character upon designation of the witness. However, what is also apparent is that section 1054.6 would not have been enacted by itself and without section 1054.3. In other words, section 1054.3 is the triggering mechanism for disclosure. (*Izazaga* v. *Superior Court, supra*, 54 Cal.3d at p. 375.) No disclosure need be made unless section 1054.3 applies. Since section 1054.6 must be read in conjunction with section 1054.3, then it follows that section 1054.6 regarding

privilege applies only when section 1054.3 comes into operation. If this is not so, then section 1054.6 regarding privilege is meaningless. There would be no need to state what is set forth in section 1054.6 since the privilege applies prior to the application of section 1054.3 and would, otherwise, be eliminated by the application of section 1054.3.

■ " 'It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute.' A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error." (2A Sutherland, Statutory Construction, *supra*, § 46.06, pp. 119-120, fns. omitted; see also *AFL-CIO* v. *Deukmejian* (1989) 212 Cal.App.3d 425, 435 [260 Cal.Rptr. 479]; *People* v. *Jackson* (1983) 143 Cal.App.3d 627, 630 [192 Cal.Rptr. 7].)

■ Accordingly, respondent's interpretation would render section 1054.6, regarding privilege, a nullity—superfluous and of no significance. The privilege would apply absent section 1054.3 and would be meaningless once the triggering mechanism of witness designation occurred pursuant to section 1054.3.

We conclude that the privilege provision of section 1054.6 is meant to modify and affect the blanket disclosure provisions of section 1054.3. Accordingly, we interpret section 1054.3 as requiring disclosure of information when the witness is designated unless that information is privileged by "express statutory provision" or otherwise protected as work product. Such an interpretation construes each statutory provision (§§ 1054.3 and 1054.6) in light of the other, is an harmonious interpretation, is reciprocal in effect (see *Izazaga* v. *Superior Court, supra*, 54 Cal.3d at p. 374), and does not render section 1054.6 a nullity.

Therefore, we find that if the information in question falls within attorney-client privilege, then it is not subject to disclosure at the time the witness is designated pursuant to section 1054.3. Respondent has conceded the information is privileged under the attorney-client relationship unless section 1054.3 abrogates that privilege by designation of the witness. Having resolved section 1054.3 does not abrogate express statutory privilege, we therefore conclude the information in question need not be disclosed prior to trial pursuant to section 1054.3.[5]

---

[5]We do not decide whether and to what extent any privilege would continue to exist once Dr. LaCalle testifies since some, if not all of the privileged information may be relevant to his

## IV.

### ATTORNEY-CLIENT PRIVILEGE NOT WAIVED BY PARTIAL DISCLOSURE OF DEFENSE EXPERT'S REPORT

██ Next, real party argues that petitioner's partial disclosure of the LaCalle report (petitioner's statements regarding the commission of the charged offenses were excluded) constitutes a waiver of any attorney-client privilege with respect to the deleted portion. We disagree.

Real party acknowledges that the disclosure of Dr. LaCalle's statement was not voluntary in that it was done pursuant to court order. A review of Dr. LaCalle's report does not demonstrate any reference to or reliance on petitioner's statement regarding the offense. Therefore, nothing contained in the report can be construed as necessitating disclosure of petitioner's statement in order to understand the balance of the report. In effect, real party is arguing that disclosure of any portion of any conversation one may have had with a psychotherapist waives the privilege for all conversations. This is not so. ██ Waiver of privilege as to one aspect of a protected relationship does not necessarily waive the privilege as to other aspects of the privileged relationship. As noted in *Jones* v. *Superior Court* (1981)119 Cal.App.3d 534, 551 [174 Cal.Rptr. 148], regarding partial disclosure of a medical history, "[Waiver] does not extend to her lifetime medical history, but only to those matters as to which, based upon her disclosures, it can reasonably be said she no longer retains a privacy interest." (See also *In re Lifschutz* (1970) 2 Cal.3d 415, 434-436 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1]; *Transamerica Title Ins. Co.* v. *Superior Court* (1987) 188 Cal.App.3d 1047, 1053 [233 Cal.Rptr. 825]; *People* v. *Superior Court (Broderick)* (1991) 231 Cal.App.3d 584, 590-594 [282 Cal.Rptr. 118].)

██ Our perspective might be different had petitioner voluntarily disclosed Dr. LaCalle's conclusions as to petitioner's mental status at the time of the crime and said conclusions were based on petitioner's version of events. However, we do not conclude that revelation of a patient's mental health history or the results of diagnostic testing necessarily incorporate directly or inferentially petitioner's statements regarding the crime. Further, it is evident petitioner was making a good-faith effort to comply with the court's order and cooperate with the prosecution without waiving any privilege regarding statements he made to Dr. LaCalle about the alleged offenses. Under these circumstances we find no waiver.

opinion, etc. (See *People* v. *Coleman* (1989) 48 Cal.3d 112, 151-152 [255 Cal.Rptr. 813, 768 P.2d 32].) In light of our conclusion with respect to attorney-client privilege, we need not address petitioner's remaining contentions regarding the applicability of psychotherapist-patient privilege, work product, the Fifth Amendment to the United States Constitution or the Sixth Amendment to the United States Constitution.

## V.

### DISPOSITION

Let a writ of mandate issue directing the superior court to vacate its previous order allowing discovery of the privileged information in question and to enter a new and different order denying real party's motion to compel production of the complete, unedited LaCalle report.

Dibiaso, J., and Vartabedian, J., concurred.